The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its Honorable Court. The first case for argument this morning is 20-1738, 3M Company v. Evergreen Adhesives. Mr. Shaw, whenever you're ready. Thank you, Your Honor. May it please the Court, Pratik Shaw for Appellant 3M. The patented issue covers a canister-based aerosol adhesive system. After finding the independent claims obvious over the Carnahan publication and broad, the Board rejected 3M's obviousness argument as to two dependent claims that limit canister pressure to specific values. But the Board did so not on the distinct grounds that West Tech now advances for affirmance, but rather on the ground that 3M had not presented argument or evidence until rehearing that a POSA would have arrived at the claim pressures based on the Carnahan-broad combination. The Board's finding was manifestly mistaken. Yet 3M's request on appeal is modest. Vacate and remand for the Board to actually consider the key expert evidence on which 3M explicitly relied in both its IPR petition and reply briefing. That evidence includes on-point, pin-sighted expert testimony that a POSA would have looked to the pressures disclosed in the Carnahan publication as a range encompassing the pressures claimed in Claims 3 and 4. Counsel, this is Judge Stoll. I wanted to ask you a quick question. Do you challenge the Board's determination at JA93 that your reply improperly incorporated the explanation that a POSA would have selected three pressure points within the levels taught by Carnahan from the expert report? In other words, all that expert testimony that was cited in the paragraph in the reply, the Board on page 893 says that under their rules, that's an improper incorporation, which I think we review for an abuse of discretion. But I don't see where you've challenged that. Oh, yes, Your Honor. We do challenge it squarely both in our opening brief and in our reply brief. And, in fact, we include a chart on pages 6 and 7 of our reply brief that marches through all of this. But, Your Honor, I'll point you to the exact spot because I think it's critical to our challenge. You've put your finger on, I think, what is probably the single most important piece of evidence in this case. It was the critical affidavit declaration from our experts that explains why you look to the Carnahan publication and how you do it, and you're right. At page 93, the Board says we're not going to consider this because it wasn't advanced in the briefing and only referenced improperly. But, Your Honor, that's just not correct under any conception of normal practice and how you cite expert testimony on pages 23 and 24 of our reply brief before the PTAB. Do you mind giving me a cite in your blue brief where you challenge the Board's determination that it was an improper incorporation by reference? Yes, Your Honor. Let me just turn to the blue brief so I can do it. So this is in – so it begins in the section on page 26 of our blue brief where we say – let me just turn to that so I can give you – and this is the Board's attempt to shore up its reasoning on rehearing is unavailing. And then we point specifically to – On what page, Pat? The section starts, Your Honor, on page 26 of our blue brief. Yes. And then in particular, the point about incorporation by reference, this is on page 31. And it's actually pages 30 and 31 is where the argument begins. And there we go through and talk about how we cited Perdomo's testimony. And then you can see on the paragraph on 31, we talk about what we did in front of the PTAB. And then we say, supporting those factual assertions with a citation to three pages of Dr. Perdomo's deposition testimony and 10 of the 170 paragraphs of the supplemental declaration, including the specific paragraphs explaining optimization using the Carnahan publication's pressures, is a far cry from impermissible incorporation by reference. And then we cite the Board's own cases on incorporation of reference there. And really, this entire section is about how we cited that expert testimony properly in front of the PTAB. And then it's essentially – probably the most significant focus of our reply brief is walking through exactly how we cited it and why this was squarely in front of the PTAB. Mr. Salk, could I – this is Judge Clevenger. The Board's analysis of your 103 challenge on the dependent claims is at JA 34 to 36 and then again at 89 to 92. And I'm not sure I understand the precise ground on which your 103 challenge was rejected. You suggest at page 25, footnote 2, that it was a teach-away problem. But I'm not sure. What is your understanding – specific understanding as to the rationale the Board used to reject your 103 challenge? So, Your Honor, it's – so I guess it was a shifting rationale. So in their final written decision, Your Honor, they didn't provide any rationale at all other than to reference the discussion of the other prior combination? Well, let's start with the Board, the primary decision, 34 to 36. The re-hearing decision, Your Honor? No, no, in the initial decision. Oh, okay. Yes, Your Honor. In the initial decision, there is a citation of the E.I. DuPont case citing a teach-away. So I'm just trying to understand what it is we're trying to decide they did wrong. I know what you think that they didn't look at, but what is their ground? Got it, Your Honor. So, Your Honor, the discussion in the final written decision on pages 34 to 36 of the appendix, that is with respect to a different combination, Takashima and Broad, that we are not appealing. And that's part of the problem. Is their only analysis on obviousness in the final written decision is to a different combination, not the combination that we actually raised? Assume I agree with you on that, that I can just ignore the initial decision and that the only thing we are looking at for purposes of obviousness of claims three and four for a Board decision is in the reconsideration decision.  When we turn there to A91, the Board is talking about the unreasonableness of getting the pressure below the 2.8 PSI for a dual propellant fission. And they say in particular, for example, you did not argue that the ionic system is a dual system that maintains the same properties of a single system. So what they're saying is that you didn't make any argument that if you were to make the combination and introduce a dual propellant into Kernaghan, that Kernaghan's properties would remain the same. Right. Your Honor, you're right. That's what the Board said on rehearing. But Your Honor, that's just demonstrably wrong at every turn. Where did you argue that if you were to modify Kernaghan by reducing the numbers in broad, that Kernaghan system would maintain the same properties, i.e., that Kernaghan's numbers for PSI wouldn't change? Right. Okay. So I think the easiest way to track all the citations is to look on page six and seven of our reply brief before this court. And we tried to compile it in one spot to make the record citations a little bit easier. But I can walk you through the highlights of that chart. So the first place would be in our actual petition itself before the IPR. At what page? It would be pages 55 and 56 of the IPR petition, which in the appendix appears at pages 165 and 166. And there we say, Your Honor, claims three and four recite obvious variations of compressed gas pressure, and then the other claims refer to solid concentrations and solvents, which require nothing more than routine optimization that is well within the knowledge of the POSA prior to April 30, 2001. Therefore, these claims are obvious in view of the disclosures in the Kernaghan publication and broad and the knowledge of the POSA as explained in the chart that follows. And then it cites Geisler and Aller, which are basically the precursors to this court's decision in applied materials, which says if a prior art encompasses a range, there's a presumption that a person of ordinary skill in the art can optimize those. And then in the chart, we reference the claim. Let me just stop you there for a second. From reconsideration, the board took back its earlier finding that Kernaghan taught a range. Correct? Your Honor, yes, it did purport to do that. That's right. And if you'd like to... What do you mean purport to do that? Did it? Yes, Your Honor, it did do that. And let me respond to that discrete point. So, Your Honor, two points on that. First of all, of course, it didn't look at our key expert evidence that explained why you should look at a range. But perhaps even more importantly, there was no disagreement on this point between the parties. Their expert. I'm sorry, Your Honor. Counsel, this is Judge Stoll. I think you've got a pretty good point about that wanted testimony. My only trouble with it is that the first time I see you citing it to the board for this proposition or anything having to do with Claims 3 and 4 is in the petition for rehearing. Am I wrong about that? Your Honor, we did make all of these arguments in the petition in reply. Now, as to... Are you talking about the specific... You had the wanted testimony and you cite the wanted testimony in your petition? No, I'm sorry. I'm sorry, Your Honor. As to the wanted testimony... When did you first cite it? We didn't cite the wanted testimony. We cited our expert that says the exact same thing. Let me ask the question much more clearly. I'm sorry about that. I want to know, when did you first cite the wanted testimony for purposes of showing the board that Claims 3 and 4 would have been obvious? I think it's in your petition for rehearing, but tell me if I'm wrong. No, Your Honor. We did not cite... That was an expert that... We did not cite that. Just answer your question plainly. We didn't cite it in the petition in reply, but we did cite our expert's testimony. And we couldn't have cited it in the petition because WANOT didn't happen until after institution. That's when they got WANOT. And then in the reply, Your Honor, we cited our expert who said the exact same thing as WANOT. Could you have cited WANOT in your reply? You had it at that time? I think yes. Yes, we did have it, but our expert said the exact same thing as WANOT. And there was no dispute. If it's undisputed testimony, if there's undisputed testimony, why wouldn't you put that in front of the board? Well, Your Honor, because the other side had never argued this otherwise. What about the institution decision? Can I ask you something? Are you familiar with... I'm sure you're familiar with the institution decision. I have to say I really commended the board because they did something that I don't think I've ever seen before. In their institution decision, they specifically said patent owner has some decent points. Their position on Claims 3 and 4 appears to have some merit. The party should address these issues during trial. Now, I admit that it's for Broad and Takashima, but still, they're focusing on Claims 3 and 4. So why would you think that this wasn't an issue? Okay, so a couple of responses, Your Honor. First of all, you're right. In the institution decision, this is exactly what they say. In particular, and this is at page A1942, this is the institution decision that you're referencing. In particular, questions have been raised regarding the evidentiary support for the rationale applied by petitioner to adjust certain pressures, concentrations, and percentages through routine optimization to arrive at the claim values. The party should address these issues during trial. The next filing after that is the patent owner response. In their 65-page patent owner response, they make only one argument as to the Carnahan-Broad combination as to Claims 3 and 4. Who wears the murder proof? We do, Your Honor, on the obviousness, but I'm just trying to explain the chain of what brought us to what we did in our reply brief. So they argued that – they never argued that this was not a pressure range or that an expert wouldn't have looked at it. What they argued was that an expert would not have been able to routinely optimize because it would have blown up because there were too many variables involved. So in our reply brief, Your Honor, we took on that argument, which was the sole argument that we made, but we went further. Page 4350-51, right? Am I right in thinking that that is the only – when I looked at your reply, the only place where I saw you talk about the dependent claims 3 and 4 would have been at page A4350-51. Am I correct about that? Yes, you are correct about that, and on those pages, Your Honor, we cite the supplemental declaration that we prepared specifically to address the institution decision language that you just highlighted. And that is the single most critical piece of evidence. We cited – pin-cited that supplemental declaration to address the board's concerns that you highlighted. And what that paragraph says could not be clearer. It says – and this is paragraph 136 of the supplemental Prudhomme declaration that goes exactly – Can I ask you something? Is that the expert declaration that the board said was improperly incorporated by reference? Yes, that is exactly right. All right. Yes. And so – What on page A4350 do you think should cause me to understand the points that you're going to tell me the expert made? Is there something – because I read that – the argument made, quite honestly, on pages 4350-51, and I think it's really high level, and I'm not getting much out of it. So I think I should have understood that this expert testimony – what this expert testimony was that was incorporated here. Right. So I think, Your Honor, you have to read it in conjunction with our petition. And so in our petition, if you start there, what we say in our petition – and this is at A165-166, which is where we first make this argument – we say claims three and four recite obvious variations of compressed gas pressure, which require nothing more than routine optimization, and that is well within the knowledge of IPOSA prior to April 30, 2001. And therefore, these claims are obvious in view of the disclosures in the Carnahan publication and broad in the knowledge of IPOSA. And then we cite there paragraph 117 of the Prudhomme Declaration that talks about the different pressures used in the Carnahan publication and that an expert would have looked to those. Then we get the language in the institution decision that you talk about. We get the patent owner response whose only argument is this is none of the arguments that we've talked about, but rather that this is going to blow up because it's too hard to do with so many variables. And we come back in the reply on 43 and 50 having set all of that groundwork, and then under the heading routine optimization by IPOSA renders obvious all remaining claims. We make the argument that an expert had plenty of evidence in the record and multiple correlations existed in the art making the claimed aerosol adhesives fully predictable to IPOSA, and then we cite – Can I ask you something? Yes. Given the teaching abroad that when you're going to use this second propellant that at a minimum you have to have a pressure of 220, if I thought that, and that was my fact finding was that I read that reference that way, and that I thought that when I made your proposed combination of Carnahan and view abroad that that same limitation would apply to Carnahan, that you've got to have at least a pressure of 220 in order to be able to have it actually remove all of the material from the canister, wouldn't I then maybe think that just a routine optimization, this is no longer a case where just because something discloses a range that automatically it must disclose a preferred number? I mean, given broad statement that at a minimum the pressure has to be 220. So, Your Honor, I think – I think that takes that out of that category of cases you're talking about where you're just talking about how a range discloses a specific amount. Yes, Your Honor. I think it would, but the problem with that, Your Honor, is any such finding would lack substantial evidence because our expert, again, if you actually read – if the board had read paragraph 136, the key paragraph that goes to this exact point, there's no countervailing evidence. The other side never argues that an expert couldn't look to Carnahan or wouldn't look to Carnahan because broad had a 220. They piled a 65-page patent owner response. They don't make the argument. So, the evidence, the only evidence on this point is from our expert who unequivocally says that you would have done so. What's the record size of paragraph 136? It's appendix 4795. Okay. And here's what it says. A POSA would target a viscosity of 1,000 centipoise, which is the viscosity disclosed by the Carnahan publication, which is also exactly in the middle of the range disclosed in broad. From there, the POSA would select three levels of pressure from the ranges disclosed in the Carnahan publication, 120 to 300 psi, and the ranges disclosed in broad, 220 to 250 psi, and pick a low, medium, and high point. For example, the three pressures could be 120, 235, and 350, and then it keeps going on. I won't read the whole thing, but it definitively addresses this point. And, Your Honor, look, if the PTAB had looked at this and said, look, we weigh this, and we look at their expert, and we think this experiment would blow up or wouldn't work after resolving this battle of the experts, Your Honor, we would have a very different appeal here, and maybe we wouldn't have a leg to stand on at that point under a substantial evidence review. But this Court's cases are clear. The PTAB can't ignore on-point expert evidence. And all we're asking for — Judge Stahl, this is Judge Stahl. I just wanted to ask, why you said that there was no substantial evidence to support, I guess, the teaching away or just the point in broad, but why doesn't the reference itself provide substantial evidence? It says exactly that when you use this particular kind of a propellant, you're going to want to have a pressure of 220 or more in order to be able to remove all the stuff from the canister. Sure. So I guess my response there would be that the board, if it wants to just rely on the face of the publication after considering our expert evidence, then maybe it can make a case as to why its expertise, even though the other side didn't disagree with us, you know, trumped that, and maybe that withstands substantial evidence review. But they at least have to consider the POSA's view, which is on-point and clearly articulated, that no, a POSA would not have read broad. You would have looked to — despite that language, you would have looked to Carnahan. Any person of ordinary skill in the art would have realized that when you're taking one large-scale canister system, which is Carnahan, and combining it with another large-scale canister system that is broad, it should work. And in fact, of course, the board found all the other independent claims using the same combination of Carnahan and broad to be obvious. So it really — a lot of this is going to come down to that incorporation by reference point and whether the board erred or abused its discretion. I think you're right, Your Honor. I fully agree with that. And, Your Honor, look, the board has a lot of case law on incorporation by reference. None of it is anywhere close to this. When they find something to be improper incorporation by reference, it's because a party has just cited generally a 150-page declaration without pointing the court to the specific paragraph, or has only made all the arguments in the declaration, not in the brief. Here, this is miles apart from that. We made the argument. We cited — pin-cited the exact paragraphs where this testimony is. And there is a lot of board precedent that says, in this circumstance, that is not improper incorporation by reference. In fact, that's how you litigate these cases because you have limited pages. You have 28 claims, so you make your argument, and then you pin-cite the relevant expert. You don't have to quote verbatim the entire expert's testimony, particularly on points that the other side never objected to or raised a counterargument. Again, I would remind that the only argument the other side made in their patent owner response with respect to this combination was not that you wouldn't look to the Carnahan pressures, but rather that this experiment that Dr. Perdomo lays out in his declaration would blow up. And again, Your Honor, if the board on remand wants to adopt their argument after weighing the two expert declarations, then we have a very different appeal. Again, all we're asking is for you to reverse that finding that the expert testimony was not properly presented to the PTAB so that they look at it. What about, Mr. Shaw, this is Judge Proust, just a little more meat on the bones in terms of what you envision for a remand. That's point one. What about the other arguments you've made with respect to the board's conclusion on range being wrong, that it's not a range? What about the teaching way that appeared in the first opinion without an analysis? Do we need to go beyond what you suggested about the declaration in your view? Certainly the court could stop there and say all of these findings you have to reassess in light of the actual on-point expert evidence that 3M presented. I would encourage the court to go one step further on the range point because, again, both sides' experts agree on that point. There's just no way to read their expert's testimony, which agrees exactly with what our expert said. I've already read you what our expert said. Their expert appears at Appendix 4171, paragraph 35. And in talking about the pressure values, he says, quote, and it goes from 4171 to 4172, and the last sentence is, quote, a POSA understands that any pressure value between these ranges could be used. So, I mean, their expert is on point saying that the 120 and 300 PSI values in Carnahan should be read as a range. There's just no other way to read it. And I understand why the board missed that because the other side didn't argue it, but it's there. I think we have your point. Can I ask one more question? Of course. Please. In terms of the list, talking about first addressing the question on whether the expert declaration was properly rejected in range, what about the teach-away issue? I'm sorry, you broke up on me, Your Honor. Judge Clevenger, you're breaking up a little on your phone. Now? Yes. Better, I think. Okay. No, it's not better. Keep trying. Now? I think. We're not hearing you, Judge Clevenger. Okay. I don't. I wanted to ask a question. You're kind of breaking up a little? Can you hear me at all? Now we can. I just heard what you just said. Can you hear me at all? We hear that. My question was whether we needed to address the teach-away issue. The board's saying that Carnahan is keeping away from reducing from 230. If I understood the question is, if you were to remand this to reassess in light of our expert evidence, would you also, in addition to the range issue that Your Honor has just asked me about, should the court also address the teach-away issue? To me, Your Honor, yes. I think to the extent the court should say, look, this finding that you've made about teaching away and broad, you need to actually assess that in light of the expert testimony that on point says no, you would look to Carnahan for these pressures, given that there is no countervailing expert testimony that disagrees with that. So I guess there's two things the court could do, which obviously would be within your discretion. One is to just say, look, there's only one piece of evidence on this, and so the teach-away finding doesn't hold water. Or I guess the more modest holding would be we vacate and remand for you to reassess all of these findings that you made in your rehearing decision in light of the expert testimony. Okay. If my colleagues have no further questions, I think we'll move on. Mr. Greenspoon? Yes. Thank you, Judge Prost. And good morning, Your Honors. May it please the court. I'd like to start with one of the items of information that we just got from Mr. Shaw, which is that the only thing that they're requesting on appeal is, I think he said, to vacate and remand for further proceedings. But if you look at their opening brief and the conclusion, you know, Federal Rule of Appellate Procedure 28 requires you to state with particularity the release you're requesting. It requested reversal. The remand and vacate only came into their reply brief as a request. I think as a result of our pointing out in a footnote at the very end of our brief that they never requested a remand. Okay. Well, I take your point. This is Judge Prost. But what I'd like you to do, if you could, to begin by where Mr. Shaw began, which is his argument that the board erred by excluding that testimony based on its rule. I apologize to interrupt. It appears Attorney Shaw has dropped from the line, so I will need to pause the proceeding. No, I'm still here. I apologize. We can continue. Is Judge Still and Judge Clevenger still here? I'm here as well. All right. So, Mr. Greenspoon, I don't know if I finished my question, but essentially, Mr. Shaw pointed us to where he raised that argument in his blue brief. Did you respond in red? Your Honor, we certainly responded that the board acted properly in all of its decisions on rehearing. And we cited particularly the rule of the board that it was using, Rule 42.6. You want to tell me where that is? Just give me a page on the red brief so it will be easier to follow along. Yes, Your Honor, if you give me just one moment. It's where we were recapping the history of the case. That's in the back. I saw that, and that's in the back. That's before you get to any of the arguments. That's just saying what the board did, right? That's right. So, on pages 18 to 19, we recap the history of the case, and we recount that the board said this argument, quote, was not advanced in the briefing and is referenced only through citation to the expert reports. So, and Your Honor, this is all in the context of a case where – No, but just let me finish the question, though. That's in your just reciting what the board said. In your argument section, did you make any argument responding to the arguments made in blue? Candidly, I don't think we responded to that exact point because what we were going to – what we were doing with this court is we were explaining the substantial evidence in the record supporting the board's decision. So, on the procedural point, we may or – I can't recall offhand a place in the red brief where we said, you know, Mr. Shaw is incorrect that the incorporation by reference is an utterly proper outcome on rehearing. But recall, the board does have tremendous discretion in applying its own rules. And I have heard today that Mr. Shaw is pointing out that perhaps there are cases where the board, acting within its discretion, permitted some sort of incorporation by reference of the nature that Mr. Shaw is talking about. The board has permission and discretion to offer grace, if you will, to a party who hasn't followed its rules. But that doesn't mean that there's any error when the board actually enforces its rules. So, you know, in that context, Your Honors, the statute and the rules all put the burden on the petitioner to include in the petition a detailed explanation of the significance of the evidence, including material facts. That's actually a quote from Rule 42.22. General notions of issue preservation require the same thing. So, where you see the petition, that's at pages 165 to 166 of the appendix. That has the complete petition argument against Claims 3 and 4. And one thing I heard Mr. Shaw say is that there was only one argument and it had to do with the experiments blowing up in our patent owner response. That's not correct. If I can refer Your Honors to pages 2022 to 2023 of the record, that is the patent owner response, where we raise that exceptions can exist to the routine optimization paradigm where the parameter optimized was not recognized to be result effective. And then we say, on page 38, bridging to 39 of the patent owner response, it was 3M's burden to prove obviousness, yet its petition is silent regarding whether or to what extent the variables in the Ground 2, that's what we're talking about at the time, the Ground 2 Challenge Claims are recognized to be result effective. So, in other words, we pointed out below that this is a case where the petitioner and now the appellant simply didn't follow the board rules to provide sufficient information to the board to meet a preponderance of the evidence burden. Am I misreading, Red, that you were really offering alternative rationales for the board's conclusion rather than embracing the board's principal conclusion, as Judge Clevenger pointed out, that they didn't bear their burden on the dual propellant? That is not exactly right, Your Honor, and I can point you to the board's conclusion on page 35. I would somewhat disagree with, I think, a characterization from Judge Clevenger as to whether there is any finding on page 35 of the record. There is a finding, and it's made using a rhetorical device that I call damning with faint praise. We all know this rhetorical device. And that's where the board has precisely said, while we agree that there may be, and may have emphasized, some evidence of record to support petitioner's position that the amount of pressure in the canister is a result effective variable subject to optimization, critically absent from petitioner's argument is why the ordinarily skilled artisan would have made the adjustment in the first instance. And believe me, I know damning with faint praise is a rhetorical device because I lost the Fourth Circuit appeal in a precedential decision where the- Well, okay, there's a lot of paper here, and I appreciate what you're saying, but going back to what Judge Clevenger raised, on page 91, this is the rehearing? Yes. I think if we had to capture in one sentence what the board's conclusion was here, would it be fair to say it's the sentence that says petitioner failed to present sufficient argument or identify evidence demonstrating it would have been obvious to use the lower pressures, blah, blah, blah, in a dual propellant system? Would you characterize that as the principle finding and basis for conclusion here? I would characterize it as one of two principle findings. The first principle finding was that there's insufficient proof to establish a result effective variable in pressurization in this claimed context. Is there anything in the rehearing petition that addresses that, or are you just going back to page 35 of the first written description? Exactly, Your Honor. I'm going to page 35 for that conclusion, and then I'm going to page 91 for the second principle finding, which, Your Honor, just read into the record. Okay. Let me recount, if I may, Your Honors, what's missing from pages 165 to 166 of the record. That's the petition. First, there's no discussion of prior art ranges and whether they overlap. That's an important part of a routine optimization case. There's no discussion or distinguishing of broads teaching away from pressures below 220 PSI. There's no discussion, even the terminology, of result effective variables, whether pressurization qualifies in a context involving canister-based spray adhesives. There's no discussion in the petition, pages 165 to 166 of the record, whether Carnahan's point settings for pressure at 120 and 300 even count, and this is an important point. As 3M repeatedly pointed out for other purposes during the proceedings, Carnahan is a single propellant reference, and this goes to that second principle point on page 91 that the board aptly caught, which is- Mr. Greenspan, that is true. Why didn't the board just say that much and say, 3M, I'm terribly sorry, but you haven't presented a theory? We know from reading both the initial decision and the reconsideration decision that the board was aware of prior art ranges, was aware of the question of whether you could reduce broads under 220, and we knew that they were talking about matching optimization. So why would the board have talked about that if it wasn't even in the petition? Well, I think the board had, if you will, an embarrassment of riches for rejecting this petition, but the board did on page 93 cite to the statute a quotation from one of this court's cases, 35 U.S.C. section 312A3, and the parenthetical is, requiring interparties review petitions to identify with particularity the evidence that supports the grounds for the challenge to each claim. So I think the board was aware of the-as argued in the patent owner response, the board was aware of the gaps in the petition. And again, I think if it-as a matter of grace, the board descended to the level that Mr. Shaw is at, and in particular discrete examples took evidence and considered evidence beyond what was in the briefing argument. Well, the board is allowed to do that, but the board certainly cannot be faulted for applying and enforcing its own rules and holding that you've got to have some substance. You've got to have, I think I heard meat on the bone in one of the questions today.  And before I forget, what about the reply? I think I heard Judge Stoll talk a great deal about that, and that's page 4350 to 4351 of the record. And again, let me just, if I may, rattle off-not rattle off, but just list for the panel what's missing in those pages of the reply. There's no discussion of Carnahan's 120 PSI disclosure. There's no discussion of whether that's part of a range. There's no discussion of whether Carnahan discloses the general conditions of the claim, which is important, because under the In Re Aller precedent that we're operating under, before you can even look at a reference and its reported range, you have to draw a conclusion or make it, you know, the challenger has to make the argument that that reference shows the quote-unquote general conditions of the claim. There's no disclosure on those pages whether pressurization is a result-effective variable, and there's no, again, no distinguishment of broad teaching away of pressurizations below 220 PSI. So the board got it right, Your Honors. So let's, you know, what we tried to do in the red brief is give comfort to this panel that even accepting the invitation to dive into the deepest details of the record, there's no wrong result here. We don't have to do that because, obviously, this is substantial evidence review. But let's take a look at exactly- Well, let me ask you. So that's, I guess, you're kind of acknowledging that you were pressing bases for our affirmants that weren't, that were different than what the board said. And don't you think that would present a Chenery problem, as your friend on the other side, I think, suggested? It does not. In fact, it's fully within our way of addressing the Chenery argument because under Chenery, this court has recognized exceptions to the Chenery argument, including, and I'll have a case to cite to you, Your Honors, including that if there's futility of any remand, if a remand would be futile at the administrative agency, then there's no Chenery problem in demonstrating that a remand would be futile, and that's the case called Fleshman v. West, 138, F. 3rd, 1429. So at the very least, one could look at all of our arguments going deep into the merits as an explanation for this panel of why any remand consistent with Chenery, even though it was waived from the principal brief on appeal, any remand under Chenery would be futile. And also, quite obviously, the elephant in the room is the remand outcome supports the same conclusion. The remand outcome was, in effect, their remand, in a sense, and it shows where the board's thinking of that in case there ever were a remand. Mr. Greenspoon, I'm sorry, this is Judge Prost. I interrupted your first argument, your first basis for arguing, and now I'm going back to it because I wanted to clarify it, which is, were you suggesting that we don't have the authority to remand it, this case, in light of the other side in blue, at least asking exclusively for a reversal? I believe you would have the authority, Your Honor, but it would be one of the rarely granted exceptions to waiver and forfeiture, and I think there's a whole set of factors this court often considers when even thinking about waiving an applicant's considered and thoughtful strategic decision not to ask for something. So I would agree there's power by the court to remand, despite the waiver and forfeiture in the opening brief, but I don't think that the rigorous standards for excusing a forfeiture apply in this case, nor has it been argued. So, Your Honors, the court affirms the board when the board draws a conclusion that it refuses to play archaeologist with the record. There's at least one case I can cite where play archaeologist with the record is exactly the quotation from the board decision that got repeated on appeal in this court, and this court affirmed the board's enforcement of its own rules to prevent the misuse of the incorporation by reference doctrine. So the board on rehearing told FREEM exactly what was wrong with its case. FREEM violated board rules with its attempted incorporation by reference, and, Your Honors, I can't overemphasize this. This case was left with just conclusory arguments unbacked by any serious advocacy or evidence. And at appendix pages 92 to 93, that's where the board told FREEM that it was being asked to play archaeologist with the record, and the board correctly refused to do that. So, Your Honors, this court should affirm. Again, I'm happy to get into any technology issue. I could talk about rheology or solids or what have you, but I think the record is very clear that this case should be affirmed. Thank you, Your Honor. Thank you. Thank you. Mr. Shah will restore three minutes of rebuttal if you need it. Thank you, Your Honor. Just three points on my end. First, this notion of waiver. I have never heard of the waiver being applied to the relief when you ask for relief.  Courts have full discretion whether to go all the way, part of the way, less of the way. I have never encountered that in my entire career as an appellate lawyer, that that would constitute a waiver. The thrust of our brief was obviously on this point was they didn't consider the evidence. And so, of course, the most common remedy is a vacant and remand. That doesn't mean you don't have the authority to go further and decide these issues and outright reverse. I just meant that oral argument, I wanted to give you what I thought was the court's usual practice. And so I just don't think there's anything there. They never cite it. They don't cite nor can they cite any case that suggests when you ask for a reversal, that somehow constitutes a waiver of the lesser included remedy of vacant or in remand. On the second point, the Chenery point, Your Honor, the futility exception, incredibly narrow. The other side has basically argued that these are alternative arguments. It's now, I think at the end of the day, there isn't really any doubt about that. It's best effort to try to ground the alternative rationales about result effective variable and that the experiments would blow up is A35, which is the final written decision, which is talking about different prior art. And in that, that wasn't even a finding. It was simply recapping their argument. There's nothing that their three arguments, they raised three arguments in the red brief. None of them defend the board's actual rationale that we somehow didn't properly cite the on point expert evidence. They're citing alternative grounds that this court simply can't reach those under Chenery. And quite frankly, it should be the PTAB's job in the first instance to grapple with those alternative arguments. Maybe they'll agree with the other side. Maybe they won't, but that's the PTAB's job to do in the first instance. And the third and last point I would like to make is that this does not require the PTAB to play archaeologists with the record. It doesn't require a deep dive in the record. All it requires is the PTAB to look at the pin cited declaration that has the most on point expert testimony on claims three and four. If they read those pin cited paragraphs, that's all that we're asking, and then make it do it. This is not an incorporation by reference case, which the PTAB has made clear is when you just cite a declaration and try to incorporate it generally as a whole. This is just normal litigation advocacy. You make a point, and then you cite the evidence that corresponds to that point. They have not cited a single case where anything like this has been considered improper incorporation by reference. The Expedia case and other cases make clear from the PTAB that this is well within that framework. Thank you. We thank both sides, and the case is submitted. Thank you, Your Honor.